No. 26,074.

EMERAE PARMAN, a Minor, by J. T. PARMAN, His Next Friend, *Appellee*, v. WILLIAM LEMMON, a Minor, by W. G. LEMMON, His Father and Natural Guardian, and W. G. LEMMON, *Appellants*.

### OPINION ON REHEARING.

#### SYLLABUS BY THE COURT.

WEAPONS—*Dangerous Weapons—Shotguns.* In enacting chapter 105 of the Laws of 1883 (R. S. 38-701, 38-702) it was not the intention of the legislature that the words "other dangerous weapons," contained therein, should include shotguns.

Appeal from Chautauqua district court; GEORGE J. BENSON, judge. Opinion on rehearing reversing former opinion filed March 6, 1926. (For original opinion of affirmance see 119 Kan. 323.)

*Carl Ackerman*, of Sedan, *Frank Doster* and *J. E. Addington*, both of Topeka, for the appellants.

*C. W. Spencer*, of Sedan, and *A. F. Sims*, of Howard, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: This controversy involves a construction of the statute concerning dangerous weapons—whether shotguns come within its purview, and whether minors are prohibited from handling and using them. The case was submitted in July, 1925, and a decision, rendered in October following, holding that shotguns were

---

Weapons, 40 Cyc. p. 855 n. 36.

within its purview and their use prohibited to minors.   On applica-
tion, a rehearing was granted and the case again argued.

The facts, briefly recited in the former opinion (*Parman v. Lem-
mon*, 119 Kan. 323, 239 Pac. 989), were as follows:

"The action was one to recover damages for the loss of an eye.  Plaintiff
prevailed, and defendants appeal.  Two boys, William Lemmon and Emerae
Parman, went duck hunting, Sunday, October 8, 1922.  William was past four-
teen and Emerae sixteen.  William fired at a hell-diver (dabchick or grebe)
on a small pond.  Some of the shot glanced on the water to where Emerae
was standing, one striking him in one of his eyes, putting it out.  Action was
brought on behalf of the injured boy against William Lemmon for negligently
inflicting the injury, and against W. G. Lemmon, his father, for negligently
furnishing his minor son with a dangerous weapon, a shotgun.  This was not
William's first gun.  His father had furnished him a .410 shotgun when he
was ten years of age.  Sometime before the injury complained of, he bought
and gave his son the gun in question—a new twenty-gauge Winchester pump
shotgun.  William frequently took his father's car and his gun and took other
boys on hunting trips, and had, on other occasions, taken plaintiff.  On the
day of the accident he took his father's car and his gun, drove down and
got the plaintiff and the two went duck hunting.  After killing some ducks
on a pond they started around the pond in opposite directions to pick up the
ducks they had killed, and when opposite each other across the pond, William
fired at a hell-diver on the pond so directly in line with the plaintiff that
several of the glancing shot hit the plaintiff.  One put out his eye."

The plaintiff contends that the question whether or not shotguns
are prohibited by the statute was not raised in the lower court, and
is not reviewable here.  While the question was not argued in the
original briefs filed in this court, and while counsel for defendants
on the first oral argument here urged other reasons for a reversal
and conceded shotguns were within the purview of the statute, yet
we find the defendant raised the question in the trial court.  The
record shows that defendant requested an instruction to the effect
that a shotgun is not in itself a dangerous weapon and that the act
of W. G. Lemmon in giving to his son William a shotgun did not
constitute a violation of the statutes.  The court refused such an
instruction, but gave one, quoting the statute and telling the jury
substantially that shotguns were within its purview.  Other in-
structions were of the same tenor.  The defendants moved for a
new trial, assigning, among other things, as grounds therefor, "er-
roneous instructions given by the court," "refusal of the court to
instruct the jury upon questions of law submitted by the defend-
ant," and "refusal to give instructions requested by the defendant."

From which it appears, beyond doubt, the question was raised in the trial court and is properly here for consideration.

The statutes involved, Laws 1883, ch. 105, reads:

"Any person who shall sell, trade, give, loan or otherwise furnish any pistol, revolver or toy pistol, by which cartridges or caps may be exploded, or any dirk, bowie knife, brass knuckles, slung shot, or other dangerous weapons, to any minor, or to any person of notoriously unsound mind, shall be deemed guilty of a misdemeanor, and shall, upon conviction before any court of competent jurisdiction, be fined not less than five nor more than one hundred dollars." (R. S. 38-701.)

"Any minor who shall have in his possession any pistol, revolver or toy pistol, by which cartridges may be exploded, or any dirk, bowie knife, brass knuckles, slung shot or other dangerous weapon, shall be deemed guilty of a misdemeanor, and upon conviction before any court of competent jurisdiction shall be fined not less than one nor more than ten dollars." (R. S. 38-702.)

It is argued that if the meaning of a statute is doubtful, that construction should be given which leads to the most reasonable result, and that it is reasonable to conclude that the legislature did not intend to make law violators of sixty per cent of the militia of the state, it being estimated that sixty per cent of the personnel of that body are minors; that it did not intend to prohibit students under twenty-one years of age in the colleges from taking military training; that it did not intend to prohibit young men under twenty-one years of age from taking out hunters' licenses and hunting; that it did not intend to prohibit young men who have not yet reached the age of twenty-one, who reside on the farms and ranches, from carrying and using shotguns and rifles when necessity requires.

These suggestions and many others have had the consideration of the court. We do not deem it necessary to discuss the question at length, nor to analyze the cases. We are of the opinion that if the legislature of 1883 had intended to include shotguns in the prohibited list of dangerous weapons it would have specifically mentioned them. This is in accordance with the views expressed by the dissenting justices at the time of the former decision. Mr. Justice Mason said:

"Courts have sometimes overworked the rule of ejusdem generis—that such words as 'and others,' following, in a statute, the enumeration of a number of articles, should by construction be expanded into the phrase 'and others of the same kind.' But the rule is still a sound one, especially in the interpretation of a penal act, where its application gives to the language of the legislature the meaning most probably intended when all considerations bearing on the matter have been duly weighed. Here the dangerous weapons specifically named in the statute have a quality in common, bearing a clear relation

to the evil to be remedied. They all (with the exception of the toy pistol, which, as noted in the opinion of the court, was inserted by amendment after the bill had been introduced) are weapons primarily intended and used to inflict injury upon human beings, and generally speaking serving no worthy purpose but the quite exceptional one of self-defense. The shotgun, on the other hand, is habitually employed for such useful and ordinary purposes as protecting crops and procuring game. Moreover, it is such a common implement that if the lawmakers intended to include it in the prohibited list it is extremely unlikely they would have failed to mention it." (*Parman v. Lemmon*, 119 Kan. 332.)

This conclusion makes it unnecessary to pass upon other questions discussed in the briefs. By a change of view on the part of some of the justices, the dissenting opinion at the time of the first decision has now become the controlling voice of the court, and further discussion is needless.

The judgment is reversed and the cause remanded for a new trial.

JOHNSTON, C. J., and HARVEY, J., dissenting.